## BARBER–COLMAN CO. v. A. G. REDMOND CO.

### No. 440.

District Court, E. D. Michigan, N. D.
July 5, 1934.

Clark & Henry, of Bay City, Mich., and Chindahl, Parker & Carlson, of Chicago, Ill., for plaintiff.

Cline & George, of Flint, Mich., for defendant.

TUTTLE, District Judge.

This suit involves United States patent No. 1,822,679, issued to Duncan J. Stewart and Edgar D. Lilja on September 8, 1931. It has to do with small-size, alternating current induction motors of the core type. This type of motor consists of a stator, composed of steel laminations, with a portion of the stator encircled by a coil of copper wire known as the "field coil." In these laminations is a circular opening into which a rotor is placed. The portions of the stator adjacent the rotor opening are known as the

"stator poles." The faces of these poles are divided into sections by copper rings, known as "shading rings," which encircle certain of these sections. The rotor consists of circular steel laminations, along whose circumference is imbedded copper conductors, connected at each end by a copper plate, known as a "squirrel cage rotor."

The accepted theoretical opinion for the operation of this motor is that when a current of electricity is passed through the field coil certain magnetic fluxes are set up to pass in a definite direction through the stator. As electricity produces flux or magnetism, so flux will produce electrical currents. As this flux traveling through the stator reaches the shading coils, currents are set up in these coils, which react on the flux to distribute it to the rotor in the desired magnitudes and time relationships, producing a turning effort on the rotor, causing it to revolve.

We are dealing more with flux or magnetism which results from electricity, than with electricity itself, and though used in many ways for nearly half a century, there are many points that those most expert cannot definitely explain.

I have had the assistance of able and diligent counsel and of experts from three great universities. I am convinced that trying the case in January of 1934 it cannot be any better presented and the record with reasonable effort made any more complete than it now is.

In these motors we find many of the same principles that we find in other motors. The great art involving electricity and flux should not be subdivided into smaller arts, so as to set this small type of motor up in an art by itself.

The patent claims a new combination, not that the principles used are new, nor that the individual elements used are new, but that the combination of those elements is new, producing a new result.

Patentees started out with a squirrel cage rotor that was old in the art, but claim a definite proportion of copper to iron to get best results. It is not claimed to be a new combination to use a rotor and stator, but plaintiff claims new dimensions in the stator for correct relation to the other parts. Shading rings are old; it is old to place them in a motor, either single or multiple. It is not claimed to be new to have the three combinations, but plaintiff claims that what is new in that element of combinations is a certain resistance shading ring. Plaintiffs claim low resistance shading rings in combination with a stator of particular dimensions, and a rotor made of certain proportions. Then is brought into this combination the fact that the unshaded portion of the flux follows the contour of the rotor to a point beyond the median line.

The unshaded flux is that flux coming from that portion of the stator pole which is not encircled by shading coils. Again it is old in the art to have this portion of the flux closely following the contour of the rotor as shown in patents to Warren, Nos. 1,283,-433, 1918; 1,283,435, 1918; 1,495,827, 1924; 1,497,394, 1924; and 1,546,269, 1925. There, even though the pole tips were of different construction, they did closely follow the contour of the rotor and extended beyond the median line. This is also shown in patents to Shivers, No. 1,654,840, 1928; Cowles, No. 1,734,941, 1929; and Horni, No. 1,720,217, 1929. It is the obvious and the natural way to construct a motor to make a round hole in the stator and put the rotor in it, which would result in pole tip extensions closely following the rotor contour and would cause the flux to do likewise.

In the British patent to Landis & Gyr, No. 212,263, 1924, it seems that the theory of flux is better understood than in the patent in suit. They attempted to pass a portion of unshaded flux to the opposite pole, without having it going through the rotor, by means of a by-pass or shunt; but it is also stated that it could be done by a solid extension of the pole tip closed around the rotor, which would be the natural way. It was, therefore, well known prior to the patent in suit that some flux would pass to the opposite pole without passing through the rotor.

There are conflicting theories as to whether or not it is desirable to pass a portion of this flux to the opposite pole without it passing through the rotor, in order to get a proper time lag or phase. Plaintiff's patent states that substantially all the flux goes into the rotor. Landis & Gyr in their patent, referred to, teach that it is beneficial to pass some flux direct to the opposite pole. I believe that for decision of this case theories are of little importance. However, from the experiments shown, I believe that the teachings of Landis & Gyr are the best thought on the subject of passing the flux. This is contrary to the theory of the patent in suit. I believe that a substantial portion does pass direct to the opposite pole, and that this is necessary to obtain a successful motor. I think that if the patentees in this patent were correct in theory as to how the flux passes, they would not be able to obtain an efficient motor.

Every element contained in plaintiff's patent is found in the prior art. You may not find a stator in just the exact proportion, or the exact field coil; but the field coil around the stator in the old structures was doing the same function it is here. The stator performed the same duties. The rotor was of the same squirrel cage construction, the only difference being plaintiff's claim that it should be one-sixth copper. Shading rings, their effect and how they worked, were just as well understood before this patent. It was also known to extend the pole tips closely following the rotor contour, solid or with air gaps at or beyond the median line. The combination is of all old elements.

This is a difficult field of science not yet fully understood, and every one desiring to build a motor must cut and try, using things known, to get the results they want, or copy one already existing, suitable for the purpose. This cut and try method was followed by the patentees using these old principles. They have not established any new and useful rules. If you permit one man to experiment and make this shorter and that longer, using all old elements in the same way, until he gets down to a good working device, and then he is able to get a patent on those dimensions, which exact dimensions you do not find anywhere in the art, then other men must stop experimenting in that preferred sphere because a patent has been granted. That is a dangerous thing, harmful to the business world, and it is the duty of the court to closely scrutinize a patent of this kind for the purpose of discovering whether there is really a new inventive thought, or simply a desirable type of the old thing. I think this case is a good illustration of that danger.

It is my opinion from the evidence that there is no new combination produced and no new result accomplished and no inventive genius exercised. That being so, the patent cannot be sustained in view of the following cases: In re Prescott et al. (Cust. & Pat. App.) 49 F.(2d) 825; Carbide & Carbon Chemicals Corp. v. Texas Company, 31 F.(2d) 32; United Drug Company v. Ireland Candy Company (C. C. A.) 51 F.(2d) 226; Goodrich Rubber Company v. Gates Rubber Company (C. C. A.) 54 F.(2d) 580; Westinghouse Electric & Mfg. Co. v. Pittsburgh Transformer Co. (D. C.) 10 F.(2d) 593.

There has been introduced in evidence a Maxigraph meter which contained a motor made according to the above-mentioned Landis & Gyr, British patent, which shows that this British patent was more than a mere paper patent; that it was sold and used commercially in this country. It is unnecessary to determine whether or not such use was a public one that would anticipate, in order to dispose of this case.

The claims relied on by the plaintiff are Nos. 3, 5, 7, 9, 10, and 12.

Claim 3 reads as follows: "An alternating current induction motor combining a stator of the core type providing two poles having opposed concave faces, a rotor of the squirrel cage type between said poles, shading coils enclosing side portions of said poles on diametrically opposite sides of said rotor and dividing said faces into a section from which unshaded flux enters the rotor and a shaded section from which a lagging flux enters the rotor. And magnetic connections between said poles having their opposite ends integral with the shaded and unshaded side tips of the opposite poles and providing inner iron surfaces closely following the rotor contour and enclosing all of the rotor iron between the poles, said rings being of such low resistance that the currents induced therein produce a magneto-motive force strongly opposing the leakage of flux directly between said poles whereby to cause substantially all of the unshaded flux threading said connections to be utilized in the rotor." There can be no question but that all of the elements described in the first sentence of this claim are old. I do not think this claim correctly interprets this art, and in any event, whether it does or not, the thing by which it does produce the results accomplished is old. I do not think it to be of any great importance whether the theory is right or wrong. If it had produced something new, a new combination which produced a new result, I would allow the claim, but the thing it does is old, the combination is old, and because it says something that may be different from what some one else has said is immaterial. I think what it says is wrong. I do not believe substantially all of the unshaded flux threading said connections is utilized in the rotor, but that as much goes by as goes in. My decision is not, however, based on that. The reason I disallow that claim is because the combination is old, and everything mentioned is old. Every one of those things works just as it did before, and because they are fitted together in such a way that the motor does a better job does not alter the fact that those different things are performing in this combination in the same way and under same principles as they did in old combinations, and no new or novel result is produced.

Claim 5 is a restatement of claim 3 with the addition of some theory of operation.

The only new feature of claim 7 is addition of physical dimensions of the stator and resistance values of the shading coils.

In claim 9 we find the added feature to consist of a plurality of shading rings, with the theory of operation. Every shading ring ever put into one of these motors in the prior art tended, if this one does, to check the flow of the unshaded flux to the opposite pole. If these rings do that, then every one, ever made did. It is a difference in degree. The principle involved is exactly the same.

In claim 10 the only additional feature pointed out is that the "stator and winding being constructed so as to be capable of maintaining the pole faces and the faces of said extensions substantially saturated." We are not told how much is a substantial amount. The same condition exists in motors of the prior art.

All that is added in claim 12 is that one-sixth of the squirrel cage rotor is to be of copper, and five-sixths of iron.

I believe these claims are completely anticipated by the French patent to Lescnyer & Georgel, No. 530,038, 1921, and the British Landis & Gyr, No. 212,263, 1924.

Every element of the combination was old; the changes made were in proportionate degree. That is not the thing for which we should reward with a patent. Any theory of the patent law which will uphold this patent, in my judgment, is going to be harmful to the commercial manufacturer and the development of science in our country.

While these small motors have met with commercial success, it appears that the demand for this small-type motor arose within the past few years, and thus caused the applications of these well-known principles to their manufacture.

In my judgment this patent does little more than would be accomplished by going into the carpenters' art and changing the length of the boards and the size of the nails and then saying that no one ever took two boards of those particular lengths and thicknesses and nails of this size and put them together. If the same functions are performed, and the same elements used as originally, it is not patentable.

I hold each and all of these claims invalid, and dismiss the bill, with costs to be taxed by the defendant.

Under Equity Rule 70½ of the Supreme Court (28 USCA § 723), my opinion may stand as the findings of fact and the conclusions of law.