## BARBER–COLMAN CO. v. SAMPSEL TIME CONTROL, Inc.
### Civil Action No. P–747.

District Court, S. D. Illinois, N. D.

Feb. 24, 1948.

Richard Russell Wolfe, Richard L. Voit, and Carlson, Pitzner, Hubbard & Wolfe, all of Chicago, Ill. (Edwin V. Champion, of Peoria, Ill., Local Counsel), for plaintiff.

Bair & Freeman and Lederer, Livingston, Kahn & Adsit, all of Chicago, Ill., and Black, Black & Borden, of Peoria, Ill. (Will Freeman, W. Melville Van Sciver, S. J. Collons, and Frank H. Marks, all of Chicago, Ill., of counsel; Kenneth Black, of Peoria, Ill., Local Counsel), for defendant.

ADAIR, District Judge.

This Cause, having been heard in open Court with both parties represented by counsel, oral testimony and evidence were presented and argument made, and this Court now makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact.

1. This is a suit for infringement of the Stewart and Lilja patent No. 1,822,679 for "Induction Motor" issued September 8, 1931, to Howard D. Colman as assignee of Stewart and Lilja. The patent has since been assigned to, and is now owned by, Barber-Colman Company, Plaintiff.

2. The patent contains twelve claims. The Plaintiff, after the complaint was filed, charged infringement by Defendant of claims 3 to 13, inclusive.

3. The Defendant has asked for a decision on the validity of claims 1 and 2 by petition for declaratory judgment under Title 28, U.S.C.A. § 400, Section 274d of the Judicial Code. This Court, under date of June 30, 1947, without deciding the validity of claims 1 and 2 ruled that, since Plaintiff did not charge infringement of claims 1 and 2 by Defendant, there was no need for a decision as to the validity of claims 1 and 2.

4. Patent No. 1,822,679 was issued on an application filed March 19, 1931 (file wrapper of which is Plaintiff's Exhibit 103), as a continuation in part of an earlier application Serial No. 407,819 filed November 18, 1929 (file wrapper of which is Plaintiff's Exhibit 102), and since permitted to become abandoned.

5. The patent in issue No. 1,822,679 has heretofore been involved in litigation as to its validity in a suit filed by Plaintiff against A. G. Redmond Co. and was held to be invalid as to all the claims there in issue, said claims being claims 3, 5, 7, 9, 10 and 12. The said suit was in the District Court of the United States, for the Eastern District of Michigan, Northern Division. Said decision was affirmed by the Circuit Court of Appeals for the Sixth Circuit. The District Court decision, dated July 5, 1934, is reported in 7 F.Supp. 508. The decision of the Circuit Court of Appeals for the Sixth Circuit is dated February 8, 1938, and reported in 94 F.2d 717.

6. Following said holding of invalidity and to the present date, Plaintiff, the owner of the patent here in suit, has not disclaimed any of the claims of said patent.

Plaintiff has marked its motors since the decision by the Sixth Circuit Court of Appeals with the patent number of the patent in suit. No suit has been brought by the Plaintiff under the patent in issue since the decision by the Sixth Circuit Court of Appeals on February 8, 1938, until the filing of the present suit on January 7, 1946, eight years later.

7. All of the claims which were held invalid by the Sixth Circuit Court of Appeals in the above case are now in issue. In addition thereto, claims 4, 6, 8 and 11 are in issue in the present suit.

8. The defenses urged by Sampsel Time Control, Inc., the Defendant in the present suit, are:

I. Invalidity of the patent in issue for lack of invention over:

A. Prior art patent No. 212,263 (British) issued December 4, 1924.

B. Prior art U. S. patent No. 1,590,086 issued June 22, 1926, to C. I. Hall.

C. Prior art U. S. patent No. 823,086 issued June 12, 1906, to L. H. Thullen.

D. Prior art U. S. patent No. 1,116,283 issued November 3, 1914, to L. F. Howard,

E. Prior art U. S. patent No. 1,654,840 issued January 3, 1928, to P. F. Shivers.

F. Prior art U. S. patent No. 736,292 issued August 11, 1903, to F. L. O'Bryan.

G. Prior art U. S. patent No. 534,151 issued February 12, 1895, to R. H. Hassler.

H. Prior art U. S. patent No. 1,720,217 issued July 9, 1929, to P. P. Horni.

I. Prior art patent No. 530,038 (French) issued December 12, 1921 to Lescuyer et al.

J. Prior art patent No. 121,003 (German) issued November 21, 1900, to R. Bauch.

K. Prior art patent No. 103,967 (Swiss), issued March 17, 1924.

II. Invalidity of the patent in issue because *of prior use and knowledge* (before the date of invention by Stewart and Lilja) on the part of the Cincinnati Gas and Electric Company and its predecessor (hereinafter referred to as Cincinnati Gas & Electric Co.) of Maxigraph motors in a number of power metering installations in sub-stations of the Cincinnati Gas & Electric Co., Cincinnati, Ohio.

III. Invalidity of the patent in issue because of *prior public use* (more than two years prior to the filing of the continuation-in-part application by Stewart and Lilja) by the Cincinnati Gas & Electric Co. of Maxigraph motors used in a number of power metering installations in sub-stations of the Cincinnati Gas & Electric Co., Cincinnati, Ohio.

IV. Invalidity of the patent in issue because of *the sale* (more than two years prior to any date by Stewart and Lilja) of Maxigraph motors in meters by Landis and Gyr, Inc. of New York City to the Cincinnati Gas & Electric Co. in Cincinnati, Ohio.

V. Invalidity of the patent in issue because of *the offering for sale* (more than two years prior to any date by Stewart and Lilja) by Landis and Gyr, Inc. of New York City of Maxigraph motors in meters.

VI. Invalidity of the entire patent in issue because of the invalidity of claims 1 and 2 of the patent.

VII. Invalidity of the patent in issue because of the failure on the part of Plaintiff to promptly disclaim after the decision by the Sixth Circuit Court of Appeals holding certain claims of the patent invalid. U. S. Code Title 35, Section 65.

VIII. Mis-use of the patent by Plaintiff because of a license thereunder extending the patent grant beyond the claims of the patent itself by contract, said license being in evidence as Defendant's Exhibit 30, and such mis-use of the patent constituting unclean hands, such to preclude Plaintiff from relief by this Court.

IX. Invalidity of the patent in issue because of the claiming of a different invention than that originally presented to the Patent Office in either the original or continuation-in-part applications.

X. Invalidity of the patent in issue because of the addition of new matter in the patent over and above that which was presented in either the original or continuation in part applications as filed.

XI. Affirmative relief in favor of Defendant because of the provisions of the antitrust laws because of the conduct of the Plaintiff in

A. Marking its product patented for nearly eight years after the patent had been held invalid;

B. Holding out to the public the patent as a valid patent and not disclaiming the invalid claims; and

C. Entering into an agreement which extended the patent monopoly beyond the claims thereof.

9. At the conclusion of the evidence, Plaintiff submitted three written motions, the first of which was to dismiss Defendant's anti-trust counter-claim; the second of which was to strike the testimony of Defendant's witnesses Love and Conaway with respect to motors manufactured by others during the eight year period Plaintiff had its invalid patent, had marked its motors patented and had not brought suit; the third one of which related to the request by Defendant that the Court rule on the validity of claims 1 and 2, even though Plaintiff did not charge infringement thereof.

10. The Court, in a decision dated June 30, 1947, dismissed Defendant's anti-trust counter-claim, dismissed the declaratory judgment action as to claims 1 and 2, and caused the testimony of Defendant's witnesses Love and Conaway and all testimony with respect to claims 1 and 2 to be stricken.

11. The subject of the patent here in issue is an electric motor known as a squirrel cage type of induction motor and comprises the following elements:

(1) a stator of the core type

(2) a portion of the stator over which an energizing winding is disposed

(3) an opening in the stator for receiving a rotor

(4) an upper slot in the face of each pole to receive a shader ring

(5) a shader ring in the upper slot

(6) a slot in the diametrically opposite pole face to receive a shader ring

(7) a shader ring in the diametrically opposite slot

(8) a squirrel cage rotor in the opening of the stator

(9) the shading rings dividing the pole faces into a shaded area and an unshaded area

(10) a stator being formed of a set of laminations completely surrounding the rotor providing extensions closely following the periphery of the rotor surface.

12. The element which encircles a portion of each pole is a copper ring sometimes called a shading coil or ring. The patent discloses the use of one or a plurality of rings of different lengths for encircling different cross sectional areas of the pole faces. The smaller ring encloses one cross sectional area of each pole face and the larger ring encloses the same area as the smaller ring plus an additional area. A single shading ring or coil is shown in figure 6 of the patent and a plurality of shading rings or coils are shown in Figure 7 of the patent.

13. Plaintiff has introduced into evidence the following physical exhibits of its manufacture:

(1) Exhibit 106 with one shading ring;

(2) Exhibit 105 with two shading rings;

(3) Exhibit 107 with three shading rings.

The three Exhibits 105, 106 and 107 vary materially in size and in the number of shading rings and are all claimed by Plaintiff to be embodiments of the patent in suit.

14. The British patent No. 212,263 and Swiss patent No. 103,967, both by Landis and Gyr, disclose by drawings and specifications, an electric motor generally known as a squirrel cage type of induction motor, and show and describe:

(1) a stator of the core type

(2) a portion of the stator over which an energizing winding is disposed

(3) an opening in the stator for receiving a rotor

(4) an upper slot in the face of each pole to receive a shader ring

(5) a shader ring in the upper slot

(6) a slot in the diametrically opposite pole face to receive a shader ring

(7) a shader ring in the diametrically opposite slot

(8) a squirrel cage rotor in the opening of the stator

(9) the shader rings (items 5 and 7 above) dividing the pole faces into a shaded area and an unshaded area

(10) a stator being formed of a set of laminations completely surrounding the rotor providing extensions closely following the periphery of the rotor surface.

The aforesaid British and Swiss patents also state that "Instead of only a single short circulating ring 3 a number of such rings may be provided." The drawings of the British and Swiss patents show a single shading ring on each pole. The specification includes the herein quoted portion and teaches the use of a plurality of rings.

15. The Maxigraph motors exemplified by Defendant's Exhibit 4 are squirrel cage type induction motors and have the following physical elements:

(1) a stator of the core type

(2) a portion of the stator over which an energizing winding is disposed

(3) an opening in the stator for receiving a rotor

(4) an upper slot in the face of each pole to receive a shader ring

(5) a shader ring in the upper slot

(6) a slot in the diametrically opposite pole face to receive a shader ring

(7) a shader ring in the diametrically opposite slot

(8) a squirrel cage rotor in the opening of the stator

(9) the shader rings (items 5 and 7 above) dividing the pole faces into a shaded area and an unshaded area

(10) a stator being formed of a set of laminations completely surrounding the rotor providing extensions closely following the periphery of the rotor surface.

The Maxigraph motors as exemplified in Defendant's Exhibit 4 also include three shader rings circumscribing different pole areas with different sized shader rings lying in different cross sectional planes.

16. The shader rings of the Maxigraph motors as exemplified by Defendant's Exhibit 4 are of low resistance.

17. When the teaching of the British and Swiss patents is followed and more shader rings are added, the combined resistance of the shader rings will decrease.

18. The Howard patent No. 1,116,283 teaches the use of low resistance shader rings exactly within the limits defined by the ohmage resistance of Plaintiff's patent, namely 1 to 2 X 10–4 ohms.

19. The Hall patent No. 1,590,025 teaches the circumscribing of different sub-areas of part of a pole with different sized shader rings.

The Hall patent also teaches the use of bridges or magnetic extensions between opposite pole faces of a stator.

20. The following patents all teach the use of a stator having pole extensions which closely follow the periphery of the rotor surface:

| | | |
|---|---|---|
| Warren | 1,283,433 | Oct. 29, 1918 |
| Warren | 1,495,827 | May 27, 1924 |
| Shivers | 1,654,840 | Jan. 3, 1928 |
| Horni | 1,720,217 | July 9, 1929 |
| Valverde | 1,758,417 | May 13, 1930 |
| Huber | 1,794,459 | Mar. 3, 1931 |
| (Swiss Pat.) | 103,967 | Mar. 17, 1924 |
| (British Pat.) | 212,263 | Dec. 4, 1924 |

21. The following patents all teach the use of a stator having pole extensions which follow closely the periphery of the rotor surface and having shader rings surrounding portions of each pole:

| | | |
|---|---|---|
| (French Pat.) Lescuyer et al. | 530,038 | Dec. 12, 1921 |
| (German Pat.) Bauch | 121,003 | Nov. 21, 1900 |
| Warren | 1,283,433 | Oct. 29, 1918 |
| Warren | 1,495,827 | May 27, 1924 |
| Warren | 1,546,269 | July 14, 1925 |
| Shivers | 1,654,840 | Jan. 3, 1928 |

22. The Hall patent No. 1,590,024 issued June 22, 1926, teaches the use of a plurality of shader rings to divert more of the unshaded flux into the rotor iron. The same theory of flux diversion is also taught in Thullen No. 823,086 and Howard No. 1,116,283.

23. The claims in issue were first presented to the Patent Office by amendment filed August 3, 1931, in continuation-in-part application (Plaintiff's Exhibit 103).

24. The claims in issue purport to distinguish from the prior art upon three grounds:

a. The manner in which the shader rings induce a magneto motive force which is alleged to cause the unshaded flux to be diverted into the rotor together or in combination with pole face extensions or bridges which completely surround the rotor with other stator parts.

b. Various dimensions and values for shader ring amperage, stator dimensions and ratio of copper to iron in the rotor.

c. The maintenance of the pole extensions substantially saturated.

All three of the grounds alleged by Plaintiff toward distinction over the prior art are found in the physical prior art, that is, the Maxigraph motors as exemplified by Defendant's Exhibit 4. The same features are also found in the teachings of the British patent No. 212,263 and Swiss patent No. 103,967, both by Landis and Gyr.

25. There was no basis in the original Stewart and Lilja application (Plaintiff's Exhibit 102) or in the Stewart and Lilja continuation-in-part application (Plaintiff's Exhibit 103) for

a. The manner in which the shader rings induce a magneto motive force which is alleged to cause the unshaded flux to be diverted into the rotor together or in combination with pole face extensions or bridges which completely surround the rotor with other stator parts.

b. Various dimensions and values for shader ring amperage, stator dimensions and ratio of copper to iron in the rotor.

c. The maintenance of the pole extensions substantially saturated.

26. The Stewart and Lilja patent in issue contains new matter first presented to the Patent Office on August 3, 1931, by amendment, which amendment is the basis for the claims now in issue, which claims for the first time include the above enumerated features, a, b, and c.

27. The Stewart and Lilja continuation-in-part application filed March 19, 1931, was for a different invention in both the specification and claims than the original application filed November 18, 1929, and the earliest date to which Stewart and Lilja are entitled for *any* disclosure to the Patent Office is, therefore, March 19, 1931.

28. The earliest date to which Stewart and Lilja are entitled for the claims in issue is August 3, 1931, the date of an amendment filed in the aforesaid continuation-in-part application on which said claims were based.

29. The Maxigraph motor as exemplified by Defendant's Exhibit 4 was "on sale" in the United States more than two years prior to the filing date of the original Stewart and Lilja application (Plaintiff's Exhibit 102) filed November 18, 1929. This fact is shown by the request for quotations dated January 4, 1927 from Cincinnati Gas & Electric Co. to Landis and Gyr with the reply thereto (Defendant's Exhibit 7) and by the tests on the Landis and Gyr Maxigraph meters, including the motor, by Cincinnati Gas & Electric Co., the test report being dated September 30, 1927 (Defendant's Exhibit 5).

30. The Maxigraph motor as exemplified by Defendant's Exhibit 4, was sold to the Cincinnati Gas & Electric Co. as shown by Invoice No. 1217 of Landis and Gyr to Cincinnati Gas & Electric Co., dated March 10, 1928 (Defendant's Exhibit 9), a date earlier than any claimed date by Plaintiff's patentees. The invoice calls for three Maxigraphs.

31. The Maxigraph motor as exemplified by Defendant's Exhibit 4, was in public use in Cincinnati by the Cincinnati Gas & Electric Co. since May, 1928.

32. There was knowledge in the United States of the Maxigraph motors as exemplified by Defendant's Exhibit 4 as early as January 4, 1927, and September 15, 1927, as shown by defendant's Exhibit 7, the request for quotations and Defendant's Exhibit 5, the tests on the Landis and Gyr Maxigraphs, both dates being earlier than any claimed date by Plaintiff's patentees.

33. The Maxigraph motor as exemplified by Defendant's Exhibit 4, was used in the United States as early as May, 1928. The use as testified to by employees of the Cincinnati Gas & Electric Co. was open to inspection and was not a secret or concealed use.

The Maxigraph motor, Exhibit 4, is one purchased by the Cincinnati Gas & Electric Co. and installed and put in use in the early part of 1928, and was removed from actual service shortly before it was introduced in evidence in this case in 1947.

34. The Cincinnati Gas & Electric Co., after testing the Maxigraph in 1927, bought some nineteen Maxigraphs from Landis and Gyr, Inc. of New York City, and each Maxigraph meter included a motor like Exhibit 4.

35. Defendant, in 1947, purchased from Landis and Gyr, Inc. of New York City two motors, one of which is in evidence as Defendant's Exhibit 2 and the other of which was traded to Cincinnati Gas & Electric Co. by Defendant for the Maxigraph motor, Exhibit 4.

36. Plaintiff brought the present suit on the patent in issue (which expires on September 8, 1948) knowing:

(a) of the prior holding of invalidity by the Sixth Circuit Court of Appeals;

(b) the invention as now claimed in the patent was in fact not made until some date between the filing of the continuation-in-part application on March 19, 1931

(Plaintiff's Exhibit 103), and the filing of the amendment therein on August 3, 1931.

## Conclusions of Law.

1. Claims 3 to 12, inclusive, of the patent in issue are invalid in view of the Landis and Gyr British patent No. 212,263, and Swiss patent No. 103,967.

2. Claims 3 to 12, inclusive, of the patent in issue are invalid in view of the French patent to Lescuyer, et al., No. 530-038, dated December 12, 1921, or United States patent to Hall No. 1,590,025, issued June 22, 1926 or German patent to Bauch No. 121,003, dated November 21, 1900.

3. There is no invention present in the claims of the patent in issue over the prior patented art of record. The patentees made and tailored changes in size and degree only, which are within the realm of accomplishment of any skilled mechanic and tailored size changes do not amount to invention.

4. Claims 3 to 12, inclusive, of the patent in issue are invalid because the aforesaid Maxigraph motors were known and used in this country prior to the earliest date established by Stewart and Lilja, the patentees. Sec. 4886 R.S., 35 U.S.C.A. § 31.

5. Claims 3 to 12, inclusive, of the patent in issue are invalid because of the sale of the aforesaid Maxigraph motors by Landis and Gyr, Inc. to the Cincinnati Gas & Electric Co. more than two years prior to the filing date of the Stewart and Lilja continuation-in-part application. Sec. 4886 R.S.

6. Claims 3 to 12, inclusive, of the patent in issue are invalid because of the public use of the aforesaid Maxigraph motors more than two years prior to the filing of the Stewart and Lilja continuation-in-part application. Sec. 4886 R.S.

7. Claims 3 to 12, inclusive, of the patent in issue are invalid because of the new matter added by the amendment of August 3, 1931, to the specification after the filing date of the Stewart and Lilja continuation-in-part application.

8. Defendant is entitled to a decree holding each of the claims in suit of the patent invalid because of prior art as set forth in these Findings.

9. Defendant is entitled to a decree awarding it all reasonable attorneys' fees in accordance with the Act of August 1, 1946, Public Law No. 587 (U.S.C.A. Title 35, Section 70), together with costs of this suit to be taxed.